# COMMERCIAL EXCLUSIVE
## SELLER LISTING AGREEMENT

For and in consideration of the mutual promises contained herein and the other good and valuable consideration, One Realco Land Holdings, Inc. as seller (hereinafter referred to as "Seller"), and CSE Commercial Real Estate, LP as broker and its licensees (hereinafter collectively referred to as "Broker") do hereby enter into this Agreement, this 1ˢᵗ day of _September_ 2009.

1. **Exclusive Listing Agreement.** Seller hereby grants to Broker the exclusive right and privilege as the Agent of the Seller to show and offer for sale the following described property lying and being situated in the City of Irving, County of Dallas, State of Texas:

   As described on Exhibit "A" (Property 1-4)

   together with all fixtures, landscaping, improvements, and appurtenances, all being hereinafter collectively referred to as the "Property." The full legal description of the Property is the same as is described in Exhibit "A". The term of this Agreement shall begin on 9/01, 2009 and shall continue through 12/31 , 2009 (hereinafter referred to as "Listing Period").

2. **Broker's Duties to Seller.** Broker's sole duties to Seller shall be to (a) use Broker's best efforts to procure a buyer ready, willing, and able to purchase the Property at the Sales Price listed on Exhibit "A" (including commission) or any other price acceptable to Seller; (b) assist to the extent required by Seller, in negotiating the terms of a real estate purchase and sale agreement; and (c) comply with all applicable laws in performing its duties.

3. **Seller's Duties.** Seller represents that Seller: (a) presently has title to the Property or has full authority to enter into this Agreement; (b) will cooperate with Broker to sell the Property to prospective buyers; (c) will make the Property available for showing at reasonable times as requested by Broker; and (d) will provide Broker with accurate information regarding the Property (including information concerning all adverse material facts pertaining to the physical condition of the Property).

4. **Marketing/Advertisements.** Broker may advertise the Property for sale in all media and may photograph and/or videotape and use the photographs and/or videotapes in connection with Broker's marketing efforts. Seller agrees not to place any advertisements on the property or to advertise the property for sale in any media except with the prior written consent of Broker. Broker is also hereby authorized to place Broker's "For Sale" sign on the Property. Broker is authorized to procure buyers to purchase the Property in cooperation with other real estate brokers and their affiliated licensees and to list the Property in a multiple listing service or similar service. Broker may distribute listing and sales information (including the sales price) to them, and said cooperating brokers and their licensees may republish such information on their Internet web sites. Broker and other real estate brokers and their affiliated licensees may show the Property without first notifying the Seller.

5. **Commission.** Seller agrees to pay Broker at closing, a real estate commission of six percent (6%) on the first $1 million of purchase price of the Property and three percent (3%) on the remaining balance of the purchase price. In the event that during the terms of this

Agreement, (1) Broker procures a person ready, willing, and able to purchase the Property at the price described herein; or (2) Seller enters into an enforceable contract for the sale or exchange of the Property with any buyer, whether through the efforts of Broker or any other person, including Seller. Broker shall share this commission with a cooperating broker, if any, who procures the buyer of the Property by paying such cooperating broker 50 % of Broker's commission. Cooperating brokers are expressly intended to be third-party beneficiaries under this Agreement. In the event that Seller sells or contracts to sell the Property to any buyer introduced to the Property by Broker within 90 days after the expiration of the Listing Period, then Seller shall pay the commission referenced above to Broker at the closing of the sale or exchange of the Property. The commission obligations set forth herein shall survive the termination of this Agreement.

6. **Limits on Broker's Authority and Responsibility.** Seller acknowledges and agrees that Broker: (a) may show other properties to prospective buyers who are interest in Sellers Property; (b) is not an expert with regard to matters that could be revealed through a survey, title search, or inspection; the condition of property; the necessity, or cost of repairs; hazardous or toxic materials; the availability and cost of utilities or community amenities; conditions existing off the property that may affect the property; uses and zoning of the property; the appraised or future value of the property; building products and construction techniques; the tax or legal consequences of a contemplated transaction; or matters relating to financing. (If these matters are of concern to Seller, Seller is hereby advised to seek independent expert advice on any of these matters of concern to Seller); (c) shall owe no duties to Seller nor have any authority to act on behalf of Seller other than what is set forth in this Agreement; (d) may make all disclosures required by law; (e) may disclose all information about the Property to others; and (f) shall, under no circumstances, have any liability greater than the amount of the real estate commission paid hereunder to Broker excluding any commission amount, paid to a cooperating real estate broker, if any.

Seller agrees to hold Broker harmless from any and all claims, causes of action, or damages arising out of or relating to (a) Seller providing Broker incomplete and/or inaccurate information; (b) the handling of earnest money by anyone other than Broker; or (c) any injury to persons on the Property and/or loss of or damage to the Property or anything contained therein.

7. **Extension.** If during the term of this Agreement, Seller and a prospective buyer enter into a real estate sales contract which is not consummated for any reason whatsoever, then the original expiration date of this Agreement shall be extended for the number of days that the Property was under contract.

8. **Broker's Policy on Agency.** Unless Broker indicates below that Broker is not offering a specific agency relationship, the types of agency relationships offered by Broker are seller agency, buyer agency, dual agency, landlord agency, and tenant agency.

The agency relationship(s), if any, NOT offered by Broker is/are the following: NONE

**Dual Agency Disclosure.** [Applicable only if Broker's agency policy is to practice dual agency] Seller does hereby consent to Broker acting in a dual agency capacity in transactions in which Broker is representing as clients both the Buyer and Seller. By entering this Agreement, Seller acknowledges that Seller understands that Seller does not have to consent

to dual agency, is doing so voluntarily, and that is brokerage engagement has been read and understood. In serving as dual agent, Broker is representing two parties as clients whose interests are or at times could be different or even adverse. As a dual agent, Broker will disclose to both parties all adverse material facts relevant to the transaction actually known to the dual agent except for information made confidential by request or instructions from client and which is not required to be disclosed by law. Seller hereby directs Broker, while acting as a dual agent to keep confidential and not reveal to the Buyer any information which would materially and adversely affect the Seller's negotiating position. Broker or Broker's affiliated licensees will timely disclose to each client the nature of any material relationship the broker and the broker's affiliated licenses have with the other client of clients, other than that incidental to the transaction. A material relationship shall mean any actually known personal, familial, or business relationship between Broker and a client which would impair the ability of Broker to exercise fair and independent judgment relative to another client. The other party whom Broker may represent in the event of dual agency must be identified at the time Seller enters into this Agreement. If any party is identified after the Agreement and has a material relationship with Broker, then Broker shall timely provide to Seller a disclosure of the nature of such relationship.

10. **Other Provisions.**

   **A. Entire Agreement.** This Agreement constitutes the sole and entire agreement between the parties hereto, and no modification of this Agreement shall be binding unless signed by all parties. No representation, promise, or inducement not included in this Agreement shall be binding upon any party hereto.

   **B. Time of Essence.** Time is of the essence of this Agreement.

   **C. Binding Effect.** This agreement shall be binding upon and shall enure to the benefit to the parties hereto and to the Seller's heirs, executors, administrators, and successors.

   **D. Terminology.** As the contest may require in this Agreement: (1) the singular shall mean the plural and vice versa; and (2) all pronouns shall mean and include the person, entity, firm, or corporation to which they relate.

   **E. Notices.** Except as otherwise provided herein, all notices, including demands, offers, counteroffers, acceptances, and amendments (hereinafter collectively referred to as Notices) required or permitted hereunder shall be in writing and delivered to the party at the address set forth below (or such other address as the party may provide in writing) either: (1) in person; (2) by an overnight delivery service, prepaid; (3) by facsimile transmission (FAX) (provided that an original of the notice shall be promptly sent thereafter if so requested by the party receiving the same); or (4) by the United States Postal Service, postage prepaid, registered or certified return receipt requested. Notwithstanding the above, notice by FAX shall be deemed to have been given as of the date and time it is transmitted if the sending FAX produces a written confirmation with the date, time and telephone number to which the notice was sent.

   **F. Governing Law.** This Agreement shall be governed by and interpreted pursuant to the laws of the State of Texas.

Seller's address:

One Realco Land Holdings, Inc.
6731 Bridge Street, Ste. 373
Fort Worth, TX 76112
Fax #: (469) 522-4410

Broker's address:

Robert N. Stewart
CSE Commercial Real Estate
4956 N. O'Connor, Irving, TX 75062
Fax #: (469) 417-0104

**SPECIAL STIPULATIONS:** The following Special Stipulations, if conflicting with any preceding paragraph, shall control.

**This agreement is subject to bankruptcy court approval.**

☐ (Mark box if additional pages are attached)

**BY SIGNING THIS AGREEMENT, SELLER ACKNOWLEDGES THAT: (1) SELLER HAD READ ALL PROVISIONS AND DISCLOSURES MADE HEREIN; AND 92) SELLER UNDERSTANDS ALL SUCH PROVISIONS AND DISCLOSURES AND HAS ENTERED INTO THIS AGREEMENT VOLUNTARILY; AND (3) SELLER IS NOT SUBJECT TO A CURRENT LISTING AGREEMENT WITH ANY OTHER BROKER.**

| RECEIPT OF A COPY OF THIS AGREEMENT IS HEREBY ACKNOWLEDGED BY SELLER. |
| :--: |
| The above proposition is hereby accepted on the 1ST day of SEPTEMBER, 2009. |

CSE COMMERCIAL REAL ESTATE
Company

By: _Robert N. Stewart_
Broker or Broker's Affiliated Licensee

Print/Type Name: _ROBERT N. STEWART_

Phone #: _(469) 417. 0100_

Fax #: _(469) 417. 0104_

ONE REALCO LAND HOLDINGS, INC.
Seller

By: _____
Seller RONALD F. AKIN, PRESIDENT

Print/Type Name(s): _____

Phone #: _972 - 243 - 7648_

Z:/Forms/LISTING AGREEMENT.doc

**Property A-1:**   4.7 acres being Lot 1, Block A and Lot 2, Block A; Las Colinas
Urban center Nineteenth Installment Revised, City of Irving,
Dallas County, Texas.
Listing Price $2,500,000         .

**Property A-2:**   ~~1.5449~~ 1.584 acres being Lot 2, Block A; ~~Antino~~ WINGATE/LAS COLINAS Addition, City of
Irving, Dallas County, Texas.
Listing Price $621,000         .

**Property A-3:**   13.220 acres located at the NWC of State Highway 114 and
Longhorn Drive, City of Irving, Dallas County, Texas.
Listing Price $4,606,000         .

**Property A-4:**   14.8 acres located at the SEC of State Highway 114 and Fortune
Drive, City of Irving, Dallas County, Texas.
Listing Price $2,600,000         .

*See the next four pages that are a part of this exhibit being the individual property surveys
pertaining to this agreement*



Exhibit "A"
Property A-2

# Exhibit "A"
## Property A-4



ALTA/ACSM LAND TITLE SURVEY

STATE HIGHWAY 114